FILED

2026 May-21  AM 09:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DANIEL L. CHAPEL,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:25-cv-01341-MHH** |
| | } | |
| **AMERICREDIT FINANCIAL** | } | |
| **SERVICES, INC. D/B/A GM** | } | |
| **FINANCIAL; and EXPERIAN** | } | |
| **INFORMATION SOLUTIONS,** | } | |
| **INC.,** | | |
| | | |
| **Defendants.** | | |

## MEMORANDUM OPINION AND ORDER

Daniel L. Chapel signed a contract to buy a 2013 Hyundai Sonata GLS from Serra Toyota Birmingham and financed the purchase through AmeriCredit Financial Services, Inc., d/b/a GM Financial.  (Doc. 14, pp. 2, 8).  Mr. Chapel alleges that under the total loss protection addendum to his contract, when he accepted a total loss settlement through Hyundai's safety recall reimbursement program, GM Financial was required to waive his remaining liability on the loan.  (Doc. 14, p. 2).  GM Financial instead reported the account to Experian Information Solutions, Inc. as a "charge-off," and Experian refused to remove the information from Mr. Chapel's credit report as Mr. Chapel requested.  (Doc. 14, p. 2–3).  Mr. Chapel has sued GM Financial for defamation, violations of the Fair Credit Reporting Act, and

violations of the Fair Debt Collection Practices Act. (Doc. 14, p. 3–4). Mr. Chapel has sued Experian for violations of the Fair Credit Reporting Act. (Doc. 14, p. 3–4). GM Financial has moved to compel arbitration, (Doc. 18), and Experian has moved to dismiss, (Doc. 19). For the following reasons, the Court grants both motions.

The Federal Arbitration Act provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects "a liberal federal policy favoring arbitration agreements," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Parties may "agree not only to arbitrate the merits of any claims that arise from their contract, but also to arbitrate any 'threshold' or 'gateway' questions about the 'arbitrability' of those claims, such as questions about the 'enforceability, scope, [or] applicability' of the parties' agreement to arbitrate their claims." *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1295 (11th

Cir. 2022) (alteration in *Attix*) (quoting *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017)).  Because the American Arbitration Association's rules provide that the arbitrator shall decide what is subject to arbitration, an agreement to arbitrate in accordance with AAA rules incorporates an agreement to arbitrate the issue of arbitrability.  *Attix*, 35 F.4th at 1296–1302.  A challenge to this sort of "delegation agreement" must be "specific to the delegation provision."  *Attix*, 35 F.4th at 1302–05 (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72, 74 (2010)).

GM Financial has produced an arbitration agreement in which the company and Mr. Chapel agreed to arbitrate "any and all disputes, claims, or controversies of any kind and nature between [them] arising out of or relating to the relationship between [them] . . . according to the applicable rules and procedures of the AAA." (Doc. 18-1, p. 10).  In his response to GM Financial's motion to compel arbitration, (Doc. 21), Mr. Chapel does not dispute that he signed the arbitration agreement, and he does not challenge the delegation provision.  Mr. Chapel broadly argues that GM Financial unduly delayed its request for arbitration, that the arbitration agreement should not be enforced because GM Financial is in material breach of contract, that the arbitration agreement is unconscionable, and that his claims are not covered by the arbitration agreement because the claims arise from statutory violations and

3

tortious conduct, not just contractual disputes. (Doc. 21, pp. 1–2).[1] Under binding caselaw, these are questions for the arbitrator to resolve.

Turning to Experian's motion to dismiss, the Eleventh Circuit has explained that the Fair Credit Reporting Act "does not require [credit-reporting agencies] to resolve legal disputes about the validity of the underlying debts they report." *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 946 (11th Cir. 2021) (alteration in *Losch*) (quoting *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1242 (10th Cir. 2015)) (citing *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010)). Experian is correct that Mr. Chapel's claim against Experian rests on the validity of Mr. Chapel's debt to GM Financial. (Doc. 19, pp. 5–6; Doc. 28, pp. 1–2). *Losch* thus bars Mr. Chapel's claim against Experian.

Accordingly, the Court grants GM Financial's motion to compel arbitration and Experian's motion to dismiss. The Court stays this matter pending arbitration. Within 30 days of the conclusion of arbitration, the parties shall please file a joint report updating the Court on the status of this case. The Clerk of Court shall please

---

[1] In support of his arguments, Mr. Chapel has quoted language that the Court has not located in the opinions on which Mr. Chapel relies. For example, Mr. Chapel purports to quote *Brown v. Genesis Healthcare Corp.*, 729 S.E.2d 217 (W. Va. 2012) and *Preston v. Ferrer*, 552 U.S. 346 (2008) on page 5 of his response to GM Financial's motion to compel arbitration, (Doc. 21, p. 5), but these quotations do not appear anywhere in these cases or in any other case the Court can find. Generative artificial intelligence likely produced these unreliable quotations. The Court does not prohibit the use of AI, but to comply with Rule 11 of the Federal Rules of Civil Procedure and other applicable legal and ethical standards, attorneys and pro se litigants must review and verify computer-generated content to ensure that the content is entirely accurate and complies with all governing standards.

TERM Docs. 18 and 19 and mail a copy of this order to Mr. Chapel's address on

file.


**DONE** and **ORDERED** this May 21, 2026.


_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

5